IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL P., a minor, by and through his mother, ELIZABETH A., of Albrightsville, Pa. 18210, and ELIZABETH A., individually and in her own right, | : : : : : : | Civil Action |
| Plaintiffs | : : | |
| v. | : : | No. |
| EAST STROUDSBURG AREA SCHOOL DISTRICT, 50 Vine St. East Stroudsburg, Pa. 18301, | : : : : : | |
| Defendant | : : | Jury Trial Demanded |

## COMPLAINT

### I. Preliminary Statement

1. The Plaintiff, Michael P. ("Michael"), a minor with disabilities, by and through his parent and natural guardian, Elizabeth A. ("Parent"), and Elizabeth A., individually and in her own right (collectively "the Family"), by and through counsel, Morgan & Morgan Philadelphia, PLLC and McAndrews, Mehalick, Connolly, Hulse and Ryan P.C., hereby complains against the Defendant, East Stroudsburg Area School District (the "District"), averring in support thereof as follows.

2. Michael is a minor with Down syndrome who has a limited ability to understand and express language, lacks regard for his own safety, and has a history of dangerous elopement. District documentation shows that Parent had expressed concern about Michael's dangerous tendency to dash off the bus when the bus stopped. As a result, the District provided specialized transportation for him including a safety aide for close adult supervision to help him get on and off his school bus and a driver who would not open the bus door until the aide was attentive and

1

ready to assist Michael.

3. On June 5, 2019, when Michael was in first grade, he was severely injured when, upon arrival at school, the school bus driver opened the door before his aide was ready and attentive. Michael threw himself down the bus steps and landed face-first on the pavement. He suffered severe injuries including a Traumatic Brain Injury ("TBI"), brain hemorrhage, orbital fracture, frontal bone (forehead) fracture, long-term behavioral changes, long-term post-concussion syndrome, and other injuries and long-term consequences.

4. Plaintiffs seek compensatory damages and reasonable attorneys' fees and costs under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 and 794(a) ("Section 504"); the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq.; and their federal and state implementing regulations. Plaintiffs also bring Pennsylvania state law tort claims based on supplemental jurisdiction under 28 U.S.C. § 1367(a).

**II.  Parties**

5. On June 5, 2019, Michael and his family resided in East Stroudsburg, Pennsylvania.[1]

6. Defendant East Stroudsburg Area School District is located at 50 Vine St., East Stroudsburg, Pa. 18301. During all times relevant to this complaint, the District was the recipient of several sources of federal funds.

7. The District operates Resica Elementary School, located at 1 Gravel Ridge Road, East Stroudsburg, Pa. 18302.

8. The District operates the school bus transportation program located at 50 Vine

---

[1] The Family moved to Albrightsville, in the Jim Thorpe School District, shortly after this incident, at the start of the 2019-20 school year.

2

Street, East Stroudsburg PA 18301.

### III. Jurisdiction and Venue

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case raises federal questions under Section 504 and the ADA. This Court has jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

10. Plaintiffs' claims and remedies are authorized by 28 U.S.C. §§ 2201 and 2202, providing for declaratory and any further relief deemed necessary and proper.

11. All the Defendant's actions complained of have taken place within the jurisdiction of the United States District Court for the Middle District of Pennsylvania, and both Plaintiffs and Defendant are located in this District. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391.

### IV. Additional Facts Supporting Liability

12. Michael is a nine-year-old former student of the District. Michael was enrolled in the District for his first-grade year in 2018-2019, attending a life skills special education program at Resica Elementary School.

13. Michael is and was at all relevant times an eligible student under the Individuals with Disabilities Education Act ("IDEA") 42 U.S.C. § 1400 et seq., and his eligibility under the IDEA automatically rendered him eligible for the protections of Section 504 and the ADA. To comply with the IDEA, the District provided Michael with an Individualized Education Program ("IEP") with the disability category of intellectual disability ("ID").

14. Michael is almost completely non-verbal, has a limited ability to understand and express language, is sensitive to noise, lacks regard for his own safety, and has a history of dangerous elopement, including running off the school bus. As a result, the District agreed in

Michael's March 7, 2019 IEP to provide the specialized transportation that he needs, specifically an aide to help him get on and off his school bus and a driver who would not open the bus door until the aide was ready to assist Michael.

15. On June 5, 2019, the District operated a school bus with Michael on board.

16. While operating the bus, the District had a duty to ensure Michael safely exited the bus under close adult supervision according to the guidelines set forth in Michael's IEP and the District's policies and procedures.

17. Upon information and belief, Joseph Curtis, a District employee, was driving the bus on that date.

18. The school bus was turned on and fully operational; opening the school bus door is an act of operation when operating a school bus; and Mr. Curtis's decision to open and/or act of opening the school bus door constituted an act of operation of the bus.

19. Mr. Curtis knew or should have known of Michael's disabilities and transportation safety needs on that date.

20. Upon information and belief, Donna Weiss, a District employee, was the aide assigned by the District to ensure Michael's safety in exiting the bus on that date.

21. Ms. Weiss also knew or should have known of Michael's disabilities and transportation safety needs on that date.

22. The District knew or should have known that, due to Michael's total lack of safety awareness and dangerous issues with elopement, he needed to be helped on and off the bus.

23. Mr. Curtis knew that after picking Michael up that morning, driving to Resica Elementary School, and before opening the bus door after he slowed and stopped at school, he needed to make sure Michael's safety aide was ready and paying attention in order to assist

Michael to safely get off the bus.

24. On June 5, 2019, when the school bus arrived at Resica Elementary School, Mr. Curtis opened the bus door when Ms. Weiss was not paying attention to and helping Michael, contrary to Michael's IEP and the District's policies and procedures.

25. With no one to help him safely exit the bus, Michael threw himself off the steps, landed face-first on the pavement, and suffered grievous injuries.

26. Michael was transported to the Pocono Medical Center for emergency treatment and subsequently, and for at least approximately six months, underwent regular follow-up care and testing showing long-term effects.

27. As a result of the careless and negligent acts and/or omissions of the District and its agents, servants, workers and/or employees, Michael suffered a TBI, brain hemorrhage, orbital fracture and closed fracture of the frontal bone (forehead).

28. The District and its employees knew or should have known that Michael was exiting the bus and failed to take necessary precautions to protect him from injuries stemming from his disregard for his own safety and dangerous history of elopement from the school bus.

29. The District's failure to help Michael and the foreseeability that he would injure himself attempting to exit the bus without supervision and/or assistance was, at the very least, careless and/or negligent.

30. After the incident, upon information and belief, the District engaged in a systematic attempt to keep the truth of what happened from Elizabeth A., by denying her access to the video recording of the incident.

31. As a result of this incident and the physical and mental injuries he sustained, Michael: (1) was rendered physically disabled, suffered and will continue to suffer great pain and

discomfort; (2) has been forced to undergo medical treatment and will need to be treated for an undetermined time in the future; (3) sustained and will continue to sustain a loss of everyday pleasures and enjoyments of life.

32. Elizabeth A. has incurred and will continue to incur substantial out-of-pocket expenses for Michael's medical and other care.

33. The Family has been informed, believes, and therefore avers that his injuries are of a continuing and permanent nature, that he will continue to suffer in the future, requiring additional medical care, and that he may be obliged to spend various sums of money and incur various expenses for treatment of the injuries.

34. Mr. Curtis and Ms. Weiss, who were Michael's caretakers on the bus, caused Michael's injuries, whether intentionally or through extreme and reckless lack of care.

35. The actions of the District and its employees were negligent, reckless, intentional, or deliberately indifferent.

36. The Defendant is liable for the damages and expenses incurred by Michael, and that will continue to be incurred by Michael, under federal and state law.

**V.   Claims Asserted**

### COUNT I – CLAIMS BASED UPON SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794 ("SECTION 504")

37. Plaintiffs incorporate by reference all preceding and subsequent paragraphs in this Complaint.

38. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits the exclusion of, or discrimination against, handicapped persons in federally funded programs. Section 504 provides that "no qualified individual with a disability in the United States shall be excluded from, denied

the benefits of, or be subjected to discrimination under any program or activity that . . . receives Federal financial assistance[.]" 29 U.S.C. § 794.[2]

39.  At all relevant times, the District received federal financial assistance from several sources.

40.  Under Section 504, a "handicapped person" is defined as "any person who has a physical or mental impairment which substantially limits one or more major life activities." 34 C.F.R. § 104.3(j)(1). The term "physical or mental impairment" is defined as "any physical or psychological disorder such as . . . emotional or mental illness and specific learning disabilities." 34 C.F.R. § 104.3(j)(2)(i). The term "major life activities" is defined as "functions such as caring for one's self . . . learning, and working." 34 C.F.R. § 104.3(j)(2)(ii).[3]

41.  At all times relevant to this Complaint, Michael was a handicapped person under

---

[2] Generally, sovereign immunity is not applicable under Section 504. When Congress enacted the Rehabilitation Act Amendments of 1986, Pub. L. No. 99-506, 100 Stat. 1807, 1st Cong., 2d Sess. (1986), it overruled the Supreme Court's holding in Atascadaro State Hospital v. Scanlon, 473 U.S. 234 (1985). This legislation carved an express exception to 11th Amendment sovereign immunity for Section 504, making states subject to federal jurisdiction for alleged violations of Section 504. See, e.g., A.W. v. Jersey City Pub. Schs., 341 F.3d 234 (3d Cir. 2003) (where State Department of Education accepted federal financial assistance, 11th Amendment immunity waived with respect to all the operations of that department for claims arising from violations of the Rehabilitation Act or the IDEA); Pace v. Bogalusa City Sch. Bd., 403 F.3d 272 (5th Cir. 2005) (sovereign immunity waived under Section 504 by state's acceptance of federal funds).

[3] Section 504 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., are closely related. See 28 C.F.R. § 35.108 (a)(2)(i) ("The definition of 'disability' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA."). Section 504 refers to 29 U.S.C. § 705(20) for its definition of individual with a disability and in turn incorporates the ADA's definition: "any person who has a disability as defined in section 12102 of Title 42." 29 U.S.C. § 705(20)(B). Under that definition, an individual with a disability is a person with a physical or mental impairment that *substantially limits one or more of such person's major life activities*, or a record of such impairment, *or being regarded as* having such an impairment. 42 U.S.C. § 12102(1) (emphasis supplied). Major life activities are very broadly defined and include but are not limited to caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. Id. at 12102(2).

7

Section 504.

42. At all times relevant to this Complaint, Defendant knew of Michael's disability.

43. The District discriminated against Michael on the basis of his disability and denied him the equal benefits of his transportation program by failing to provide him with safe and properly supervised transportation, causing the injuries described herein.

44. An aggrieved party has the right to bring a civil action for compensatory damages in federal district court for a violation of Section 504. Chambers v. School Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 189, 197 (3d Cir. 2009).

45. Where a free appropriate public education is at issue, the rights bestowed upon students and families by Section 504 are enforceable through administrative and judicial procedures, but neither compensatory damages nor attorneys' fees are available to plaintiffs at these administrative levels. 20 U.S.C. § 1415; 34 C.F.R. §§ 104.36, 300.507, 300.510, 300.512. However, where the relief sought is not for the denial of a free appropriate public education ("FAPE"), exhaustion of Section 504's administrative procedures is not required. Fry v. Napoleon Community Schools, 137 S.Ct. 743 (2017); W. B. v. Matula, 67 F.3d 484, 496 (3d Cir. 1995), abrogated on other grounds, A.W. v. Jersey City Public Schools, 486 F.3d 791 (3rd Cir. 2007) (same). Accordingly, exhaustion of administrative remedies is not required in this matter.

46. A court may award monetary damages to an aggrieved parent or child with disabilities who brings a claim under Section 504 or the ADA. Chambers, 587 F.3d at 189; A.W. v. Jersey City Public Schools, 486 F.3d 791, 804 (3d Cir. 2007) ("The remedies for violation of Section 504 are coextensive with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964. These remedies include compensatory damages, injunctive relief. and other forms of relief traditionally available in suits for breach of contract.")

(citations omitted)); Bucks County Dept. of Mental Health/Mental Retardation v. Commonwealth of Pennsylvania, 379 F.3d 61, 68 n. 5 (3d Cir. 2004); Matula, 67 F.3d at 495. Recovery is available under Section 504 where entities charged with the care of persons with disabilities failed to properly provide or supervise that care, and physical injury resulted. Enright v. Springfield Sch. Dist., 2007 WL 4570970 at *10-11 (E.D. Pa. Dec. 27, 2007) (affirming a jury verdict awarding monetary damages of $400,000 pursuant to Section 504 and ADA); Susavage v. Bucks Cty. Intermediate Unit 22, 2002 WL 109615 at *20 (E.D. Pa. 2002) (allowing a damage claim pursuant to Section 504 where a public agency allowed the improper use of an inappropriate harness for an orthopedically impaired, special-needs child).

47. Defendant owed Michael the benefit of an appropriate and properly supervised transportation program in accordance with Section 504.

48. Defendant violated Section 504 and denied Michael the benefits of his transportation program by failing to provide him with safe and appropriate transportation free from injury and bodily harm, whether at the hands of his caregivers or through their neglect and indifference.

49. Defendant discriminated against Michael on the basis of his disability by failing to provide him with a safe and properly supervised transportation program, causing his injuries. Defendant and its employees acted in bad faith, used gross misjudgment, and consciously disregarded and/or were deliberately indifferent to Michael's rights, which caused the injuries described herein.

50. As a direct and proximate result of Defendant's violations of Section 504 as set forth above, Michael was injured, and has suffered severe physical and emotional trauma, behavioral changes, and loss of life's most basic pleasures. He has incurred and will continue to incur significant physical, emotional, behavioral harm and monetary damages from the injuries he

9

has suffered due to Defendant's violations of Section 504.

51. Section 504 permits recovery of reasonable attorneys' fees by parents who are "prevailing parties" in an action or proceeding under those statutes. 29 U.S.C. § 794a (b).

52. Wherefore, Plaintiffs demand judgment against Defendant, for compensatory damages, punitive damages, complete medical expenses, attorneys' fees and costs, and all other compensation which this Court deems fair and proper, in an amount in excess of seventy-five thousand dollars.

## COUNT II -- AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101

53. Plaintiffs incorporate by reference all preceding and subsequent paragraphs of this Complaint.

54. Title II of the ADA prohibits discrimination against qualified individuals with disabilities by all state and local governments, regardless of whether those entities receive Federal funds. Title II applies to all programs, activities, and services of public school districts, including transportation.[4]

55. The requirements for a claim under the ADA are the same as those under Section 504, except that under the ADA, the plaintiff's disability need be only one factor in causing the denial of benefits or discrimination at issue. See 29 U.S.C. § 794(a); 42 U.S.C. § 12132; Helen L. v. DiDario, 46 F.3d 325, 330 n. 7 (3d Cir. 1995). Therefore, the ADA's causation requirements are less stringent than Section 504's. Lamberson v. Pennsylvania, 963 F. Supp.2d 400, 412 (M.D. Pa. 2013). "The existence of an alternative cause ... may not necessarily be fatal to an ADA claim so long as disability 'played a role in the ... decision making process and ... had a determinative

---

[4] The ADA contains a provision abrogating sovereign immunity under the Eleventh Amendment, 42 U.S.C. § 12202.

effect on the outcome of that process.'" New Directions Treatment Servs. v. City of Reading, 490 F.3d 293, 300 n. 4 (3d Cir. 2007) (reversing the denial of summary judgment in favor of plaintiff in part because the District Court improperly applied Section 504's sole causation requirement to plaintiff's ADA claim, which required only "but for" causation).

56. The ADA provides that an aggrieved party has the right to bring a civil action for compensatory damages in federal district court. Chambers, 587 F.3d at 189, 197.

57. Plaintiffs are not required to exhaust administrative remedies. See ¶ 36 supra; Fry; Patrick B., 2012 WL 1079127, at *4; Matula, 67 F.3d at 496.

58. A court may award monetary damages to an aggrieved parent or child with disabilities who brings a claim under the ADA. Chambers, 587 F.3d at 189; Matula, 67 F.3d at 495; Bucks County, 379 F.3d at 68 n. 5; Patrick B., 2012 WL 3233036, at *4 ("compensatory damages, while not available under the IDEA, are available under . . . the ADA").

59. The ADA permits recovery of reasonable attorneys' fees and costs by parents who are "prevailing parties" in an action or proceeding. 42 U.S.C. § 12205.

60. Defendant violated the ADA and denied Michael the benefits of his transportation program by failing to provide him with safe and appropriate transportation free from injury and bodily harm, whether at the hands of his caregivers or through their neglect and indifference. The District's refusal to reasonably accommodate Michael's disabilities permitted his injuries to occur.

61. Michael was deprived of the equal benefits of his program, and otherwise subject to discrimination, because of his disability.

62. Defendant's conduct constituted a conscious disregard for, and deliberate indifference to, Michael's rights under the ADA to a safe, appropriate and properly supervised transportation program, and to be free from bodily harm, whether at the hands of his caregivers or

by their indifference.

63. As a direct and proximate result of Defendant's violations of the ADA as set forth above, Michael suffered damages as described herein.

64. Wherefore, Plaintiffs demand declaratory and injunctive relief against Defendant, and respectfully request that the Court declare Defendant's past actions and inactions toward Michael to violate the ADA, and to compel Defendant to take all necessary steps to ensure that Defendant adequately hire, train, staff and supervise its programs to avoid future injuries to other individuals similarly situated.

## COUNT III – NEGLIGENCE AND RECKLESSNESS

65. Plaintiffs incorporate by reference all preceding and subsequent paragraphs in this Complaint.

66. At all times relevant to this Complaint, the District and its employees had a duty under Pennsylvania law and federal and state statutes and regulations to appropriately supervise Michael and transport him safely, both separate and apart from his IEP, and specifically and as heightened by his disabilities, safety needs, and the provisions of his IEP; to transport him safely, free from unreasonable and foreseeable risks of harm; to hire, train, and supervise employees that would transport him safely; and to refrain from taking unreasonable actions that would cause him injury.[5]

67. The Defendant owed Michael a duty of care to prevent the injuries he suffered, because, under the same or similar circumstances, a reasonable, prudent and careful person should

---

[5] The Pennsylvania Political Subdivision Tort Claims Act (PSTCA) does not apply, and the District is not immune, not only because this is a Court of the United States, but also due to the exception with regard to willful conduct, 42 Pa. C.S. § 8542(a)(2), and the transportation exception, 42 Pa. C.S. § 8542(b)(1).

12

have anticipated that injury to Michael or to those in a like situation would likely result from the foregoing conduct.

68. The District breached its duty when by and through its agents, servants, workers and/or employees, it negligently and recklessly: failed to adequately hire, train, supervise, and discipline its staff and its transportation program; failed to ensure that Michael's safety aide was ready and attentive before the bus driver opened the bus door; failed to properly assist Michael off the bus; failed to follow the proper policies and procedures when a special-needs transportation student was exiting the bus; failed to follow the procedures enumerated in Michael's IEP while he was exiting the bus; failed to maintain adequate control and safety supervision of Michael while he exited the bus; failed to ensure Michael's safety and failed to take necessary measures to reduce his risk of injury, when the District knew or should have known through its IEP that he completely lacked safety awareness and had a dangerous history of elopement, which made exiting the bus without proper supervision and/or safety assistance an activity that would likely lead to injury.

69. The District's many failures proximately and foreseeably caused Michael's injuries.

70. The District's negligence and recklessness directly and proximately caused Michael significant damages.

71. The District's conduct was outrageous and/or done willfully, wantonly, and/or with reckless indifference to Michael's rights, and it directly and proximately caused his injuries.

72. Michael's injuries occurred while he required, was known to require, and had been guaranteed constant safety supervision from the District while on the bus.

73. The District's negligence may be inferred under the doctrine of *res ipsa loquitor*, because the extensive injuries suffered by Michael are of the type which do not normally occur in

the absence of abuse, indifference, negligence, or recklessness under the circumstances described herein, with a student expressly unable to attend to his own safety and entirely dependent upon the District for safety getting on to or off of the bus; the injuries suffered by Michael occurred while his person was under the exclusive control of the Defendant; and the injuries suffered by Michael were not due to any voluntary action or contribution on his part.

74. Defendant's acts and/or omissions described herein also violated its public duty as a matter of law to provide safe, appropriate and properly supervised transportation, education, and care for Michael in compliance with federal and state statutory and regulatory requirements.

75. Defendant's permitting Michael's injuries thus constituted negligence *per se*.

76. The harms suffered by Michael were the direct, proximate and foreseeable results of Defendant's acts and omissions described herein.

77. As a direct and proximate result of Defendant's negligence and recklessness as set forth above, Michael was severely injured, and has suffered severe physical and emotional trauma, behavioral changes, and loss of life's most basic pleasures. He has incurred and will continue to incur significant physical, emotional, behavioral harm and monetary damages stemming from the injuries he has suffered due to Defendant's negligence and recklessness.

78. Wherefore, Plaintiffs demand judgment against Defendant, for compensatory damages, punitive damages, medical expenses, attorneys' fees and costs, and all other compensation which this Court deems fair and proper, in an amount in excess of seventy-five thousand dollars.

## COUNT IV -- BREACH OF FIDUCIARY DUTY

79. Plaintiffs incorporate by reference all preceding and subsequent paragraphs in this Complaint.

80. A fiduciary relationship existed between Defendant, including its employees, and Michael, in that Michael and his Family reposed a special confidence in Defendant to the extent that Michael and Defendant did not deal with each other on equal terms, due to Michael's disabilities, as well as his dependence and justifiable trust on Defendant and their personnel.

81. Defendant breached that duty through its actions as set forth above.

82. As a direct and proximate result of Defendant's breaches of fiduciary duty, Michael was injured, and has suffered severe physical and emotional trauma, behavioral changes, and loss of life's most basic pleasures.

83. Michael has incurred and will continue to incur significant physical, emotional, behavioral harm and monetary damages stemming from the injuries he has suffered due to Defendant's breaches of fiduciary duty.

84. Wherefore, Plaintiffs demand judgment against Defendant, for compensatory damages, punitive damages, medical expenses, attorneys' fees and costs, and all other compensation which this Court deems fair and proper, in an amount in excess of seventy-five thousand dollars.

## VI. Relief Requested

Plaintiffs seek monetary compensatory damages, declaratory and injunctive relief, punitive damages, complete medical expenses, travel expenses, lodging expenses, and reasonable attorneys' fees and costs under Pennsylvania law, the Americans with Disabilities Act, and Section 504, and such other relief as this Court deems fair and proper, in an amount in excess of seventy-five thousand dollars.

Respectfully submitted,

_____
John W. Goldsborough, Pa. ID #73063

_____
Michael J. Connolly, Pa. ID #82065

_____
Dennis C. McAndrews, Pa. ID #28012
MCANDREWS, MEHALICK, CONNOLLY,
HULSE & RYAN P.C.
30 Cassatt Avenue
Berwyn, PA   19312
610-648-9300 (voice)
610-648-0433 (fax)

_____
Kevin Clancy Boylan, Pa. ID #314117
Morgan & Morgan Philadelphia, PLLC
2005 Market St., Suite 350
Philadelphia, PA 19103
(215) 446-9795 (voice)
(215) 446-9799 (fax)

Attorneys for Plaintiff