UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL P., a minor, by and through his mother, ELIZABETH A., and ELIZABETH A., individually,<br><br>Plaintiffs,<br><br>v.<br><br>EAST STROUDSBURG AREA SCHOOL DISTRICT,<br><br>Defendant. | CIVIL ACTION NO. 3:21-cv-00902<br><br>(SAPORITO, J.) |

## MEMORANDUM

On June 5, 2019, Michael P., a minor with disabilities, was severely injured when he allegedly "threw himself down the bus steps and landed face-first on the pavement" causing himself significant brain injuries. (Doc. 1, ¶ 3). On May 18, 2021, the plaintiffs, Michael P. and his parent and natural guardian Elizabeth A., filed this action against the East Stroudsburg Area School District (the "District") asserting claims under § 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794, and the Americans with Disabilities Action ("ADA"), 42 U.S.C. §§ 12131 *et seq.*, state-law negligence and recklessness claims, and a state-law breach of

fiduciary duty claim.[1] (*Id.*). The plaintiffs allege that the District's bus driver and Michael P.'s aide, a District employee, knew or should have known of Michael P.'s disabilities and transportation safety needs including dangerous issues with elopement, on the date of Michael's injuries. (*Id.*, ¶¶ 19—22). Now before the Court are both parties' cross motions for summary judgment. (Doc. 50; Doc. 51). The motions have been fully briefed (Doc. 52; Docs. 56–61) and are ripe for review.

## I.  Background[2]

On September 27, 2017, Michael P. was enrolled in the East Stroudsburg Area School District. Michael is diagnosed with Down syndrome and holds an IQ of 52, placing him below the first percentile as compared to other children at his age. Due to Michael's disabilities, the District educated him in a full-time life skills classroom for very low-

---

[1] On September 20, 2022, the Court dismissed the plaintiffs' recklessness subclaim within Count III and the plaintiffs' breach of fiduciary duty claim set out in Count IV. (Doc. 24). The plaintiffs' remaining claims are as follows: (1) claims based upon Section 504 of the Rehabilitation Act (Count I); (2) claims under the Americans with Disabilities Act (Count II); and (3) state-law negligence claims (Count III).

[2] The facts included within this section are all undisputed and taken from the parties' statements of material facts. *See* (Doc. 56-2; Doc. 57).

functioning students. Michael's disabilities also required transportation accommodations to and from school.

At the time of the events leading up to Michael P.'s injury on June 5, 2019, Michael P. was receiving specialized door-to-door transportation service on a small vehicle with a booster seat that secured him during transit. Michael P.'s individualized education program[3], written in January of 2019, noted the following: "Due to Michael's limited ability to understand and express language, sensory issues with noise and his lack of safety awareness (including issues of elopement that could be dangerous) the team feels it would benefit him to have specialized transportation as stated within the related services of this document." Indeed, Michael P.'s parents had previously informed the District that they "expressed concerns regarding the regular bus stop with regard to Michael's tendency to run (elope) and run into the road." Moreover, Michael P.'s bus driver had noted that Michael P. would sometimes jump

---

[3] "An IEP consists of a specific statement of a student's present abilities, goals for improvement of the student's abilities, services designed to meet those goals, and a timetable for reaching the goals by way of the services." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010) (quoting *Holmes v. Millcreek Twp. Sch. Dist.*, 205 F.3d 583, 589 (3d Cir. 2000)) (citations omitted).

out of the bus into his father's arms when arriving home at the end of the day.

On June 5, 2019, the date of the injury, Michael P. arrived at the District on his assigned bus.[4] At some point, Michael P.'s bus driver parked the vehicle on the curb of the school and began to fill out a form. After completing the form, the bus driver walked over to Michael P. and removed Michael P. from his booster seat harness. He then walked Michael P. to the bus stairs. The parties disagree on what happens next.

The plaintiffs allege that Michael P. leaped from the top stairs of the bus and landed face down on the pavement. *See* (Doc. 57, ¶ 23) ("Michael was entirely unattended as he leaped out of the bus and landed face first on the pavement."); (*Id.*, ¶ 27) ("… and [Michael] jumped out of the bus, injuring himself."); (*Id.*, ¶ 41) ("… [Michael] jumped from the top step with no one to help him and he landed face down on the pavement…."). The District contends that Michael P. accidentally fell after losing his balance. (Doc. 56-2, ¶ 92) ("There were no warning signs

---

[4] The description of the events surrounding Michael's injury are based on two videos provided by both parties. (Doc. 51-8). The parties, unsurprisingly, have two different interpretations of the events based on those videos, and thus, we have included a neutral version of the events within this section.

before Student fell...."); (*Id.*, ¶ 93) ("[I]t appears that Student either stopped short or lost his balance causing him to fall."). In either event, Michael landed on the pavement and suffered significant brain injuries due to his fall. These injuries include, according to the plaintiffs, "a Traumatic Brain Injury ("TBI"), brain hemorrhage, orbital fracture, frontal bone (forehead) fracture, long-term behavior changes, long-term post-concussion syndrome, and other injuries and long-term consequences." (Doc. 1, ¶ 3).

As noted above, the plaintiffs allege that the District knew or should have known of Michael P.'s disabilities and transportation safety needs. They seek compensatory damages and reasonable attorneys' fees and costs under Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and a state-law claim for negligence.

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure dictates summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

Parties seeking summary judgment bear "the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52. A court must first determine if the moving party has made *prima facie* showing that it is entitled to summary judgment when evaluating such a motion. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of

material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a form which is inadmissible at trial, the content of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

### III. Discussion

Both parties have moved for summary judgment concerning the plaintiffs' remaining three claims: (1) claims based upon Section 504 of the Rehabilitation Act (Count I); (2) claims under the Americans with

Disabilities Act (Count II); and (3) a state-law negligence claim (Count III).

### A. The RA and ADA Claims

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Title II of the ADA states that: "no qualified individual with a disability shall by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any entity." 42 U.S.C. § 12132.

Claims under the ADA and the RA are generally subject to the same substantive standard. *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013); *Hewlette-Bullard ex rel. J.H-B. v. Pocono Mountain Sch. Dist.* 522 F. Supp. 3d 78, 103 (M.D. Pa. 2021). A student alleging that he has been discriminated against by a school under the ADA and the RA must prove that he "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied

the benefits of the program or was otherwise subject to discrimination because of [his] disability." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). Although claims under the RA and the ADA are otherwise generally the same, the causation elements of the RA and the ADA differ in that the "RA allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program *solely* on the basis of disability, while the ADA covers discrimination on the basis of disability, even if there is another cause as well." *CG v. Pa. Dep't. of Educ.*, 734 F.3d 229, 235–36 (3d Cir. 2013) (emphasis added). Both statutes require plaintiffs to prove "that they were treated differently based on the protected characteristic, namely the existence of their disability." *Id.* at 237. A claim under the RA also requires that the school or board of education receives federal financial assistance. *A.C. v. Scranton Sch. Dist.*, 191 F. Supp. 3d 375, 389 (M.D. Pa. 2016).

To obtain compensatory monetary damages under § 504 of the RA and the ADA, however, the Third Circuit requires a plaintiff to prove intentional discrimination, which is analyzed under a deliberate indifference standard. *S.H.*, 729 F.3d at 261, 263 ("[A] showing of deliberate indifference may satisfy a claim for compensatory damages

under § 504 of the RA [and the ADA.]"); *see also D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014). To satisfy the deliberate indifference standard:

> A plaintiff "must present evidence that shows both: (1) knowledge that a federally protected right is substantially likely to be violated…, and (2) failure to act despite that knowledge." *Id.* at 265 (citing *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)). "Deliberate indifference does not require a showing of personal ill will or animosity toward the disabled person." *Id.* at 263 (quoting *Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011) (internal quotation marks omitted)). It does, however, require a "'deliberate choice, rather than negligence or bureaucratic inaction.'" *Id.* (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 276 (2d Cir. 2009)).

*D.E.*, 765 F.3d at 269.

Here, the plaintiffs have alleged similar claims under the RA and the ADA against the District. In essence, the plaintiffs argue that the District discriminated against Michael P. and denied him the equal benefits of his transportation program by failing to provide him with safe and properly supervised transportation free from injury and bodily harm. (Doc. 1, ¶¶ 39, 41—43, 47—48, 49—50, 60—63). Specifically, the plaintiffs contend that the District showed deliberate indifference to Michael P.'s federally protected rights because Michael P. had a "long-standing and

specific habit of rushing off the bus and leaping from the top step" and that the District failed to assist him during the transportation process despite its awareness of Michael's disabilities causing him to jump dangerously off the bus. (Doc. 52, at 11). Indeed, both parties' cross motions for summary judgment concern the dispute about whether the District had knowledge of Michael P.'s propensity to jump. The plaintiffs have moved for summary judgment on the basis that the District had adequate awareness of Michael P.'s tendency to jump from the bus; the District moves for summary judgment on the basis that it never had that awareness. Nonetheless, upon review of the record, there remains a genuine dispute of material fact about the District's awareness of Michael P.'s propensity to leap that precludes the granting of either party's motion.

There is no dispute that Michael P.'s Down syndrome diagnosis required transportation-related safety measures while riding the bus. (Doc. 56-2, ¶ 33); (Doc. 57, ¶ 4). At the time of the injury, the District had provided Michael P. transportation accommodations consisting of "curb-to-curb transportation on a small vehicle [with] a booster seat." (Doc. 56-2, ¶¶ 33, 34); (Doc. 57, ¶ 11). One of those reasons for the

accommodations, as the District concedes, is that Michael P. had a "tendency to run (elope) and run into the road." (Doc. 57, ¶ 13); (Doc. 58, ¶ 13). Michael P.'s most recent individualized education program noted that "[d]ue to Michael's limited ability to understand and express language, sensory issues with noise and his lack of safety awareness (**including [issues with] elopement that could be dangerous**), the team feels it would benefit him to have specialized transportation…." (Doc. 56-2, ¶ 39) (emphasis included); (Doc. 57, ¶ 10). Moreover, the District also concedes that Michael P. would sometimes jump into his father's arms when dropped off at home after school. (Doc. 56-2, ¶ 54); (Doc. 57, ¶¶ 19—21). Therefore, it would appear that the District had knowledge of both Michael P.'s propensity to elope into the street and jump into his father's arms upon arrival of his home. The plaintiffs have moved for summary judgment arguing that the District should have been aware that there was a substantial risk that Michael P. could leap out of the bus causing himself injuries based in part on these prior tendencies and his disabilities. But the plaintiffs' categorization of the events occurring on June 5, 2019, are not that simple. Many of the plaintiffs' interpretations of facts are disputed by the District and are better left to be determined

by a factfinder. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

First, there is a genuine dispute of material fact about whether the District had, or should have had, awareness that Michael P. would jump from the top of the bus onto the pavement. As noted above, the District concedes that it had awareness that Michael P. had a propensity to run into the road or jump into his father's arms at the end of the school day. But the District notes that on June 5, 2019, Michael P. did not jump into his father's arms upon arrival to his home but rather when the bus arrived at school. (Doc. 56-2, ¶ 55). According to the District, "[f]rom his time at Pocono Mountain School District, to his start at the School District in fall 2017, through June 4, 2019 (and arguably June 5), [Michael] never once jumped from the top of the bus steps, or eloped from the bus, while being dropped off at school." (*Id.*). Moreover, the District contends that Michael P. never had any prior problems with navigating the bus stairs throughout the years. (Doc. 56, at 10) ("Ms. Thompson[, a classroom aid,] never shared any concerns about Student's ability to get

off the bus, and specifically, never mentioned issues with navigating the stairs or jumping."). Therefore, the determination of whether the District had prior knowledge that Michael P. could jump from the bus steps on June 5, 2019, upon arrival to the school remains better left to a jury.

Second, there remains a question about whether Michael P. actually jumped from the bus or whether he fell inadvertently. The District argues that Michael P. "either stopped short or lost his balance causing him to fall." (Doc. 56-2, ¶ 93). Moreover, it contends that "[t]here were no warning signs before Student fell, and … that because it happened so fast… [no one] could have done anything else to stop the fall." (*Id.*, ¶ 92). The plaintiffs argue that "Michael leaped head-first from the top step of his school bus." (Doc. 52, at 2). This issue, again, is better left to the determination of a factfinder.

For these reasons, there are genuine disputes as to the material facts whether the District was aware of Michael P.'s propensity to jump and whether Michael P. did in fact jump that prevents the Court from granting either party's motion for summary judgment for the plaintiffs'

RA and ADA claims.[5]

### B. The Negligence Claim

The plaintiffs also allege that the District and its employees had a duty, under applicable law, to appropriately supervise and transport Michael P. safely and free from unreasonable and foreseeable risks of harm; to hire, train, and supervise employees that would transport him safely; and to refrain from taking unreasonable actions that would cause him injury. (Doc. 1, ¶ 66). They further allege that the District breached its duties, and its negligence caused injuries to Michael P. (*Id.*, ¶¶ 68–70). Here, the District has moved for summary judgment by asserting that the Political Subdivision Torts Claim Act ("PSTCA") bars the plaintiffs' negligence claim, and it argues that the "vehicle liability" exception under 42 Pa. Cons. Stat. Ann. § 8542(b)(1) does not apply to this action because Michael P.'s injuries did not arise from the *operation* of the bus.

The Commonwealth of Pennsylvania and its agencies, officials, and

---

[5] While the plaintiffs argue that the undisputed facts show that the District had awareness of Michael's propensity to jump from the steps, the District contends that those same facts prove that the District had no awareness. Our analysis applies equally to both parties' arguments that there remains a genuine dispute of material fact as to the District's awareness.

employees are generally immune from suits for damages when acting within the scope of their duties. *Brown-Boyd v. Southeastern Pennsylvania Transportation Authority*, 320 A.3d 872, 876 (Pa. Commw. Ct. 2024). "The Judicial Code lists exceptions to sovereign immunity, which apply to 'damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.'" *Id.* (quoting 42 Pa. Cons. Stat. Ann. § 8522(a)). One of these exceptions is known as the "vehicle liability" exception. *See* 42 Pa. Cons. Stat. Ann. § 8542. The vehicle liability exception provides that liability may be imposed on a local agency where injury is caused by the "operation of any motor vehicle in the possession or control of the local agency."[6] 42 Pa. Cons. Stat. Ann. § 8542(b)(1). Pennsylvania courts have defined "operation" as follows:

> The process of operating a vehicle encompasses more than simply moving the vehicle. When a person "operates" a vehicle, he makes a series of decisions and actions, taken together, which transport the individual from one place to another. The decisions of where and whether to park, where and whether to turn, whether to

---

[6] The dispute between the parties lies solely on the definition and application of the word "operation" in the statute. Neither party contests whether it was in the "possession or control of the local agency."

>engage brake lights, whether to use appropriate signals, whether to turn lights on or off, and the like, are all part of the "operation" of a vehicle.

*Balentine v. Chester Water Authority*, 191 A.3d 799, 810 (Pa. 2018).[7] Courts have also articulated that the term "operation" includes failures to act. *Brown-Boyd*, 320 A.3d at 873 (holding that a failure to engage attachments, such as a handicap ramp, constitutes the "operation" of a public bus). But here, upon review of the record, there is still a dispute of material fact as to whether Michael P.'s accident arose from any "operation" of the bus, preventing the Court from granting either party's motion for summary judgment.

The plaintiffs argue that sovereign immunity is inapplicable in this action because Michael P.'s injuries resulted from the District's failure to act and thus, fall outside the scope of the vehicle liability exception. (Doc. 52, at 12). In support, they cite *Brown-Boyd*, where the court found that a driver's refusal (and failure) to lower a handicapped ramp for a plaintiff weakened by cancer fell under the definition of "operation" for purposes

---

[7] In *Balentine*, the Pennsylvania Supreme Court adopted the definition of "operation" as previously articulated by former Justice Sandra Schultz Newman in a dissenting opinion in *Warrick v. Pro Cor Ambulance, Inc.*, 739 A.2d 127 (Pa. 1999) (Newman, J., dissenting).

of sovereign immunity. (*Id.*, at 13) (citing *Brown-Boyd*, 320 A.3d at 874, 879). The court in *Brown-Boyd* articulated that a party's "failure to act" in the context of the vehicle liability exception must concern a "failure to engage attachments [of the vehicle], such as a handicap ramp" rather than a general negligent act that may indirectly involve the vehicle. *Id.* at 879. Here, the plaintiffs allege that the bus driver's negligent use of the bus doors contributed to Michael P.'s injuries, (Doc. 1, ¶¶ 18, 68), and upon review of the evidence provided to the Court (Doc. 51-8), we find that a reasonable factfinder could conclude that Michael P.'s injuries could have arisen from the bus driver's "operation" of the bus doors. Much like the decisions of "where and whether to park, where and whether to turn, [and] whether to engage brake lights…," the decision of whether to open and close bus doors constitutes an "operation" of a vehicle. *Balentine*, 191 A.3d at 810. But, "a plaintiff must demonstrate that their injury was *caused* by the negligent operation of a sovereign party's vehicle" to invoke the vehicle liability exception. *See Covington v. Plymouth Twp. Police Dep't*, 779 F. Supp. 3d 509, 536 (E.D. Pa. 2025) (emphasis added). Indeed, while a factfinder could determine the opening of the doors played no role in Michael P.'s injuries, a reasonable factfinder

could equally conclude that the opening of the bus doors served as a potential catalyst to Michael P. jumping out of the bus, or at the very least, contributed to the extent of Michael P.'s injuries. Therefore, the determination of whether the bus driver's operation of the vehicle's bus doors contributed to Michael P.'s injury is better suited for the jury rather than this Court. We will deny both parties' motions for summary judgment as to the plaintiffs' negligence claim.

## IV. Conclusion

For the foregoing reasons, the parties' cross motions for summary judgment will be denied.

An appropriate order follows.


Dated: January 9, 2026                *s/Joseph F. Saporito, Jr.*
                                                              JOSEPH F. SAPORITO, JR.
                                                              United States District Judge